# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8326 | **DATE** | 4/2/2002 |
| **CASE TITLE** | Simon Schuster vs. Shepard Chevrolet, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motions *in limine* are granted in part and denied in part; and defendant's motions *in limine* are granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |

APR 03 2002

date docketed

docketing deputy initials

4/2/2002
date mailed notice

JJK courtroom deputy's initials

U.S. DISTRICT COURT

02 APR -2 PM 1:31

Date/time received in central Clerk's Office

JJK
mailing deputy initials

Document Number

70

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SIMON SCHUSTER,                          )
                                         )
       Plaintiff,                   )
                                         )     No. 99 C 8326
vs.                                      )
                                         )     Magistrate Judge Schenkier
SHEPARD CHEVROLET, INC.,                 )
                                         )
       Defendant.                   )

**DOCKETED**

APR - 3 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, claiming that defendant Shepard Chevrolet, Inc. discriminated against him on the basis of age when the defendant terminated his employment in December 1998. On February 11, 2002, by virtue of the consent of the parties pursuant to 28 U.S.C. § 636(c), the case was transferred to this Court for all proceedings, including the entry of final judgment (doc. # 67). The case is set for a jury trial to commence on April 22, 2002. Presently before the Court are various motions *in limine* filed by each of the parties. The Court's rulings on each of these motions *in limine* are set forth below.

### I.

Plaintiff has filed eleven motions *in limine*, all of which the defendant opposes in whole or in part. We address those motions *seriatim*.

## A.    Motion *In Limine* to Bar Evidence or Testimony Regarding the Age of Other Employees Retained or Hired by Defendant After Plaintiff's Termination (Motion *In Limine* No. 1).

As originally presented, this motion sought to bar (1) evidence concerning the ages of all 95 persons employed by defendant as of December 31, 1998 (approximately the time of plaintiff's termination), including 31 managerial and sales personnel; and (2) evidence that one full-time sales person hired by defendant after plaintiff's termination was in his 60s (Pl.'s Mot. at 1). In its response, defendant disavowed an intent to offer evidence concerning the sales person hired after plaintiff's termination, and agreed to limit its evidence of the ages of persons employed by defendant as of December 31, 1998 to 31 managerial and sales personnel (Def.'s Resp. at 3). Plaintiff concedes that evidence concerning the age of other managerial personnel is relevant and admissible, since plaintiff himself was employed as a manager at the time of his termination (Pl.'s Reply at 2-3 n.1).

Thus, as distilled by the parties' briefs, the sole issue remaining on this motion *in limine* is whether defendant should be permitted to offer evidence concerning the ages of the non-managerial sales personnel employed by defendant as of December 31, 1998. Plaintiff argues that this evidence is irrelevant, because sales people are not similarly situated to managers, and that even if relevant, this evidence should be excluded because it would be unfairly prejudicial and confusing to the jury. For the reasons that follow, the Court agrees.

The Seventh Circuit has made clear that while statistical evidence may not be "the primary means of establishing discrimination in disparate treatment situations, . . . , it can be utilized." *Bell v. Envt'l. Prot. Agency*, 232 F.3d 546, 552 (7th Cir. 2000). "In conjunction with other evidence of disparate treatment . . . , statistics can be probative of whether the alleged disparity is the result of discrimination." *Id.* (quoting *Kidd v. Ill. State Police*, 167 F.3d 1084, 1101 n.16 (7th Cir. 1999)).

2

The appeals court stated that "[s]tatistical evidence, therefore, should be admitted as evidence if it meets the [evidentiary] requirement that it 'make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Bell*, 232 F.3d at 553 (quoting FED. R. EVID. 401). "The usefulness of statistics in an individual treatment case to show pretext 'depends on all the surrounding facts and circumstances.'" *Id.* (quotations omitted).

In this case, plaintiff will argue at trial that the real reason for his termination was age bias, and that the nondiscriminatory reasons offered by the defendant are phony ones. Evidence of the age breakdown of other employees similarly situated to plaintiff may help the jury assess the credibility of defendant's proffered nondiscriminatory reason for terminating the plaintiff, and is thus the type of evidence that would be admissible under *Bell*.

The key qualifier, however, is that in order to be relevant, the evidence must involve other persons "similarly situated" to plaintiff. The *Bell* court made this point, stating that "[e]vidence of intentional discrimination can include 'evidence, *whether or not rigorously statistical*, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which the employer is forbidden to base a difference in treatment received systematically better treatment.'" *Bell*, 232 F.3d at 554 (emphasis in original). To determine "whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case," *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000), but which typically include the level of similarity with respect to conduct, qualifications, job performance, and standards for measuring performance. *Id.* at 617-18. Plaintiff has pointed out, without contradiction, that the duties and qualifications of a manager differs from

3

those of a sales person, and that managers and sales personnel report through a different chain of command (Pl.'s Reply at 2-3). Accordingly, we do not believe that the age demographics of sales persons would provide relevant statistical information, and for that reason we agree with the plaintiff that this evidence should be excluded.

Thus, plaintiff's motion *in limine* no. 1 is GRANTED insofar as it seeks to exclude evidence of the age of sales people employed by the defendant as of December 31, 1998. The balance of plaintiff's motion is DENIED as moot, on the grounds that (1) the plaintiff has conceded that evidence of the age of managerial personnel employed as of December 31, 1998 is relevant and admissible, and (2) defendant has agreed not to offer evidence of the ages of other persons employed by the defendant as of December 31, 1998, or evidence that after plaintiff's termination it hired a sales person who was in his 60s.[1]

> **B.** **Plaintiff's Motion *In Limine* to Bar Evidence or Testimony Regarding Plaintiff's Ability or Inability to Use the Computer Systems (Motion *In Limine* No. 2).**

In this motion *in limine*, plaintiff argues that the defendant should be barred from offering evidence that plaintiff was unable to process lease applications or to use computer systems. Plaintiff argues that this evidence is irrelevant and that its admission would cause unfair prejudice. For the reasons that follow, we disagree.

---

[1]The managerial personnel whose ages are relevant and admissible includes both sales managers and other managers, as well as assistant managers. The parties have not identified which of the 31 persons who fall within the classification of managerial and sales personnel are managerial employees. However, judging from the stipulation in the final pretrial order (Final Pretrial Order, Schedule A, ¶ 16) and a listing of employees and their job titles set forth in Defendant's Exhibit 6, it appears to the Court that there are at least 14 people who fall within the category of "other managerial personnel": Rafael Bazbaz, Ricardo Delavega, Brian Farrar, Richard Harig, Tom Harnden, Craig Jackson, David Jackson, Robert Johns, Tina Joyce, Kurt Laczniak, Jerry Nordstrom, Edward Wagner, Gary Williamson, and David Wilson.

On the question of relevance, plaintiff offers three arguments. *First*, plaintiff argues that evidence concerning plaintiff's job performance (here, specifically, his ability to use computer systems and process leases) is irrelevant because plaintiff was not terminated for performance reasons (Pl.'s Mot. at 2; Pl.'s Reply at 2-3). *Second*, the plaintiff argues that because he intends to offer a "direct evidence" case of age discrimination, evidence of job performance is irrelevant because plaintiff will not have to establish satisfactory job performance as an element of a *prima facie* case (Pl.'s Reply at 3). *Third*, plaintiff argues that even if job performance were relevant, ability to use the computer is not relevant to plaintiff's job performance because he was never notified by the employer that this was expected of him (*Id*. at 4).

In the Court's view, these arguments go to the weight rather than the admissibility of evidence concerning plaintiff's ability to use the computer systems or to process leases. Plaintiff argues that in the summary judgment pleadings the defendant admitted that it did not terminate plaintiff for performance reasons (Pl.'s Mot. at 2) – a point defendant does not address or dispute in its response. Yet, in denying summary judgment, the district judge then presiding in the case held that "the relevant facts which are disputed," and thus which create an issue for the jury at trial, include "[w]hether plaintiff was performing the duties of his job satisfactorily and meeting Shepard Chevrolet's expectations" (Doc. # 20: 05/31/01 Order). Moreover, the final pretrial order prepared by the parties several months after the denial of summary judgment further makes it clear that both parties plan to explore plaintiff's job performance at trial. Plaintiff's contested issues of fact include the assertion that "Mr. Schuster's performance while employed at Shepard Chevrolet was excellent" (Final Pretrial Order, Schedule B, ¶ 26), as well as numerous other factual assertions concerning the quality of his performance – including specific assertions that seek to minimize the significance of

any lack of facility that plaintiff had with the computer system (*Id.*, ¶¶ 31-32, 34-35). Moreover, the parties included in the final pretrial order as an agreed contested issue the question of "[w]hether Schuster was meeting Shepard Chevrolet's legitimate expectations at the time of his termination" (*Id.*, Schedule F, ¶ 1).

In light of the summary judgment ruling and these statements in the final pretrial order, it is difficult to accept plaintiff's contention that evidence of his ability or inability to use the computer and close leases is irrelevant. To the extent that plaintiff was able to close lease deals sufficiently without the use of the computer, was never told that he needed to be able to use the computer, and was never criticized for his computer skills or success in closing deals, plaintiff is free to bring those facts to the attention of the jury. Likewise, to the extent that defendant might offer explanations for its reasons for terminating Mr. Schuster that vary from what they have previously said, that, too, is a point that plaintiff can bring to the jury's attention for consideration when assessing the credibility of defendant's stated reasons for its actions.

Nor do we see this as a situation where evidence of plaintiff's facility (or lack thereof) with the computer or his ability to close lease deals would be unfairly prejudicial to the plaintiff. Plaintiff clearly plans to try to persuade the jury that plaintiff's performance was "excellent" (Final Pretrial Order, Schedule B, ¶ 26), no doubt to support his contention that the real reason for plaintiff's termination was his age. It certainly is not unfairly prejudicial for the defendant to offer evidence to rebut that assertion; to the contrary, it would be unfair to allow plaintiff to offer such evidence but to require the defendant to remain mute. Accordingly, plaintiff's motion *in limine* no. 2 is DENIED.[2]

---

[2]Plaintiff has filed three other motions *in limine* attempting to exclude other evidence concerning plaintiff's job performance: (1) a motion *in limine* to bar evidence or testimony regarding plaintiff leaving early from work (motion *in limine* no. 3); (2) a motion *in limine* to bar evidence or testimony regarding plaintiff allegedly sleeping on the job

### C. Motion *In Limine* to Bar Evidence or Testimony Regarding Plaintiff's Alleged Strained Relationship with George Shepard (Motion *In Limine* No. 6).

Plaintiff seeks to bar evidence that during the last year of plaintiff's employment with the defendant, plaintiff's relationship with George Shepard grew strained (Pl.'s Mot. at 1). Mr. Shepard was the sole owner and operator of Shepard Chevrolet during the entire period that the plaintiff worked there (Final Pretrial Order, Schedule A, ¶¶ 3-4). Plaintiff argues that evidence of any alleged strain in his relationship with Mr. Shepard is irrelevant because the personal relationship between plaintiff and Mr. Shepard "was not a factor in the Defendant's decision to terminate the Plaintiff," and also should be barred under Fed. R. Evid. 403 on the ground that it would be "highly improper and prejudicial" (Pl.'s Mot. at 2). We disagree.

Evidence that plaintiff had a strained relationship with Mr. Shepard, and that plaintiff's alleged conduct caused that strain, is relevant because (if accepted) this evidence would tend to corroborate the information that Mr. Shepard allegedly heard from other sales managers – that plaintiff "intimidated and inhibited them." While Mr. Shepard was not plaintiff's manager, plaintiff concedes that Mr. Shepard was the "sole decisionmaker" with respect to plaintiff's termination (Pl.s' Reply at 2). Evidence of Mr. Shepard's personal knowledge of plaintiff's conduct would assist the jury in assessing Mr. Shepard's testimony about what the sales managers told him, and what he made of that information. To the extent that plaintiff is able to show that Mr. Shepard previously disavowed that he had a "strained" relationship with the plaintiff, as plaintiff suggests he will be able

---

(motion *in limine* no. 4); and (3) a motion *in limine* to bar evidence or testimony regarding the recalling of a car (motion *in limine* no. 5). The foregoing reasoning in denying the motion to bar evidence concerning plaintiff's ability to use the computer and close lease deals applies to these other motions, and leads the Court to deny plaintiff's motions *in limine* nos. 3-5 as well.

to do (Pl.'s Reply at 2-3), plaintiff is free to do so in an effort to impeach Mr. Shepard's credibility. That may make the evidence that defendant wishes to offer unpersuasive to the jury, but it does not render it irrelevant.

As for the argument based on Rule 403, defendant does not explain what unfair prejudice would result from this evidence being admitted, and we see none. If the evidence shows that there was a strained relationship, that may enhance the credibility of the defendant's stated reason for termination – but that kind of prejudice is of the type inherent all relevant evidence, and is by no means "unfair." On the other hand, if plaintiff is able to show that Mr. Shepard's testimony about a strained relationship is not credible, that may advance plaintiff's claim at the expense of the defendant – and that certainly would not constitute unfair prejudice to the plaintiff. Accordingly, the Court DENIES plaintiff's motion *in limine* no. 6.

**D.     Motion *In Limine* to Bar Evidence or Testimony Regarding Co-Workers and Subordinates' Assessment of the Plaintiff's Performance (Motion *In Limine* No. 7).**

In this motion, plaintiff seeks to bar defendant from offering evidence (1) that members of the sales staff complained that plaintiff interfered with their business dealings, was impatient, and did not listen to others; (2) that several of defendant's managers described plaintiff as interfering, impatient and having a negative attitude; and (3) that some of defendant's managers described plaintiff's part-time position as unnecessary (Pl.'s Mot. at 1). The crux of the parties' disagreement about this motion is their dispute about what the evidence will show concerning the awareness of the decisionmaker, Mr. Shepard, about these matters. Defendant argues that Mr. Shepard, "the decisionmaker, relied upon the complaints of other managers and co-workers at the Dealership in

terminating Plaintiff" (Def.'s Resp. at 2). Plaintiff, on the other hand, asserts that Mr. Shepard never received or considered such complaints from managers or other workers (Pl.'s Reply at 3-5).

This is a credibility dispute that is for the jury to resolve at trial, and not for the Court to resolve on a motion *in limine*. However, the Court can provide guidance to the parties as to the standard the Court will apply in determining what evidence to admit in connection with this disputed point.

*First*, plaintiff is correct that Mr. Shepard could not have relied on complaints about the plaintiff that had not come to Mr. Shepard's attention as of the time of the termination. Accordingly, defendant's evidence about complaints will be limited to those that Mr. Shepard knew about at the time of the termination.

*Second*, Mr. Shepard may testify as to complaints that were brought to his attention, even if the individual who made the complaint does not testify. We have considered the plaintiff's argument that this evidence is inadmissible hearsay, but we disagree. The evidence would be offered not for the truth of the matter asserted, but to show what information Mr. Shepard had at the time of his decision that he relied on in making that decision. Whether that information was sufficient to give Mr. Shepard a good-faith basis for termination, and whether he in fact relied on such information as the reason for terminating the plaintiff, is a matter for the jury to consider.

*Third*, we have considered plaintiff's argument that Mr. Shepard's testimony about the complaints he received from managers is inconsistent with the testimony of the managers themselves (Pl.'s Reply at 4). That inconsistency does not make Mr. Shepard's testimony irrelevant – although, if plaintiff can prove what he suggests, those inconsistencies may affect the jury's assessment of Mr. Shepard's credibility.

*Fourth*, in its response, defendant offers no argument as to why testimony by certain of defendant's managers that plaintiff's part-time position was "unnecessary" should be admitted, and we see no reason why that testimony would be relevant. The Court therefore agrees that it should be excluded.

Accordingly, plaintiff's motion *in limine* no. 7 is GRANTED in part, and DENIED in part. Evidence concerning statements by managers about the necessity of plaintiff's part-time position is excluded. Evidence concerning complaints by plaintiff's fellow managers and other workers about the way that plaintiff interacted with them and his attitude will be allowed, so long as defendant is able to lay an adequate foundation that Mr. Shepard was aware of those complaints as of the time of the termination.

## E. Motion *In Limine* to Bar Evidence or Testimony Regarding Collateral Sources of Income (Motion *In Limine* No. 8).

In this motion, plaintiff seeks to bar evidence that he received payments from the Social Security Administration after his termination on the ground that they are barred by the collateral source rule (Pl.'s Mot. at 1). "The purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice." *Equal Employment Opportunity Comm'n. v. O'Grady*, 857 F.2d 383, 389 (7th Cir. 1988) (quoting *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986). "The collateral source rule thus focuses on what the tortfeasor and collateral source should pay, not on what the plaintiff should receive." *O'Grady*, 857 F.2d at 389. Whether collateral source payments are to be deducted from a back pay award is committed to the discretion of the trial judge. *See, e.g., Hunter v. Allis-Chalmers Corp. Engine Div.*, 797 F.2d 1417, 1428 (7th Cir. 1986); *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743, 755 (7th

Cir. 1983); *Kohnke v. Delta Airlines, Inc.*, No. 93 C 7096, 1995 WL 478858, at * 4 (N.D. Ill. March 20, 1995); *Stein v. Forest Pres. Dist. of Cook County*, No. 92 C 5567, 1994 WL 160563, at * 1 (N.D. Ill., April 28, 1994).

In arguing that plaintiff's social security benefits resulting from plaintiff's unemployment should be admitted, defendant argues in the first instance that these are not "collateral" benefits at all because defendant "at least partially funded" plaintiff's social security benefits by paying social security taxes (Def.'s Resp. at 2). This argument fails for several reasons.

*First*, defendant's argument ignores the Seventh Circuit authority recognizing that "[f]unds supported in part – but not entirely – by contributions from the defendant are generally considered collateral." *O'Grady*, 857 F.2d at 390. As the *O'Grady* court recognized, payments for pension and unemployment compensation benefits "are designed to serve social polices independent of those served by back pay awards." *Id.* (quotations omitted). The Seventh Circuit found this to be a persuasive reason to refuse to offset pension benefits from an ADEA back pay award, *id.* at 391, and it is likewise persuasive to this Court in its decision to exercise its discretion not to deduct social security payments from any back pay award.

*Second*, just as defendant can say it partially funded the social security payments, it is also true that plaintiff himself "partially funded" those payments by virtue of the social security taxes that he paid over the years. If defendant is found liable, and the choice is between giving plaintiff the benefit of the payments (by not deducting them from back pay) or defendant the benefit of the payments (by deducting them from back pay), the Court would exercise its discretion to allow any arguable "windfall" to go to plaintiff, and not to a party found liable for discrimination. *See Hunter*, 797 F.2d at 1429 ("so the choice seems to be between conferring a windfall on Allis-Chalmers and

11

a windfall on Hunter. As a victim of Allis-Chalmers' wrongdoing, Hunter is the logical choice");

*Stein*, 1994 WL 160563, at * 1 ("as between the District and Stein, any windfall should go to Stein, not the wrongdoer").

*Third*, allowing the defendant to deduct social security benefit payments received by plaintiff from any back pay award would confer on defendant a "discrimination bonus." *See O'Grady*, 857 F.2d at 391. If plaintiff had continued to work for the defendant, the defendant would have had to pay his salary as well as contributions for social security benefits. Under defendant's argument, if liable, defendant would pay less than this amount: defendant would pay back pay (which is only the salary defendant would have paid plaintiff but for the termination), *minus* (rather than *plus*) social security contributions. The Court would exercises its discretion to prevent a result that would "allow[] an adjudicated violator of the ADEA to pay less than it would have paid had it acted lawfully." *Id.*[3]

Defendant's other principal argument is that absent a deduction for social security benefits and other third-party payments, plaintiff would obtain an improper "windfall double recovery" (Def.'s Resp. at 2). But, this argument flies in the face of clear Seventh Circuit authority that the focus of the collateral source is not with preventing overcompensation of the plaintiff, but rather preventing double payment by the tortfeasor. The Court does not believe that the *Orzel* case, cited by defendant, is to the contrary. In that case, the Seventh Circuit affirmed the trial court's decision to deduct unemployment compensation and retirement pension benefits from a back pay award.

---

[3]Defendant does not identify what third-party payments other than social security benefits it seeks to deduct from back pay, and in the pretrial order identifies only unemployment compensation (Final Pretrial Order, Schedule O, at 4-5). As the Seventh Circuit has noted, courts generally have rejected the attempt to deduct unemployment compensation payments from back pay. *Perry*, 794 F.2d at 286 n.3. For the reasons stated in that opinion, as well as those set forth above, the Court in its discretion will not deduct any unemployment compensation payments received by plaintiff.

However, in that case, the plaintiff had not appealed that decision, and it was in that context that the Seventh Circuit found that there was not an abuse of discretion. *Orzel*, 697 F.2d at 756. That decision, issued before the Seventh Circuit's statements in *O'Grady* and *Perry*, does not persuade the Court to exercise its discretion to allow unemployment compensation benefit payments (or social security payments) to be deducted here.

Inasmuch as the Court finds that social security benefit payments and unemployment compensation benefits will not be deducted from back pay, the Court finds that evidence of plaintiff's receipt of those payments is irrelevant at trial. Accordingly, plaintiff's motion *in limine* no. 8 is GRANTED.[4]

### F. Motion *In Limine* to Bar Evidence or Testimony Regarding Plaintiff's Financial Status or Wealth (Motion *In Limine* No. 9).

In this motion, plaintiff expresses the concern that defendant will offer evidence of plaintiff's financial status, which plaintiff asserts is "immaterial to any issue in this lawsuit" (Pl.'s Mot. at 1). In response, defendant disavows any "intention of introducing evidence of Plaintiff's 'wealth' per se" (Def's Resp. at 2). The only evidence of plaintiff's financial status that defendant seeks to offer relate to his compensation or other payments which may constitute a setoff, or which bear on mitigation of damages.

We agree that to the extent plaintiff argues that defendant should not be able to offer certain evidence to show setoffs or lack of mitigation, those addressed by other motions – not this one. However, since defendant disavows any intention of offering evidence of plaintiff's financial status,

---

[4]In its opposition to the motion, defendant indicated its desire to offer evidence of money that Mr. Shepard allegedly had loaned plaintiff over the years, as well as a severance package provided on his termination (Def.'s Resp. at 2). Since these are direct benefits allegedly supplied by the employer, and are not third-party payments, we fail to see any relevance of these payments to the motion to bar evidence of collateral source payments. In any event, the alleged loan and severance payments are the subject of other motions by plaintiff, which we address below (pp. 14-16, *infra*).

rather than deny the motion as moot, we will GRANT plaintiff's motion *in limine* no. 9 as unopposed.

### G. Motions *In Limine* to Bar Evidence or Testimony Regarding (1) Plaintiff's Acceptance of the Severance Package (Motion *In Limine* No. 10) and (2) Personal Loans (Motion *In Limine* No. 11).

In these motions, plaintiff seeks to bar evidence that he received a severance package upon his termination, and that Mr. Shepard personally loaned the plaintiff $75,000.00 in 1990 and an additional $25,000.00 in 1995. Plaintiff argues that evidence of the loans is irrelevant, and would be unduly prejudicial. As for the severance package, plaintiff concedes that the evidence "may be relevant to the issue of damages," since back pay may be reduced by the amount of severance pay received, but argues that the jury should not receive the evidence because it would be unfairly prejudicial (Pl.'s Severance Package Mot. at 1-2).

The Court denies plaintiff's motion to bar evidence of the severance package. We fail to see how this relevant evidence would unfairly prejudice plaintiff. Apparently, defendant will argue that the severance package shows Mr. Shepard's "generous and benevolent treatment of Plaintiff" (Def.'s Resp. to Severance Package Mot. at 2). But, plaintiff asserts that the jury will not believe that argument, and instead will view this offer as a cynical attempt by Mr. Shepard "to free himself of the potential liability from his obvious discriminatory treatment of Plaintiff" (Pl.'s Reply to Severance Package Mot. at 2). The risk that the jury may accept defendant's rather than plaintiff's interpretation of the offer does not constitute a risk of "unfair prejudice" that would warrant excluding this relevant evidence from the jury's consideration.

Plaintiff also suggests that evidence of the severance package should be withheld from the jury and used instead by the Court as a setoff against the verdict (Pl.'s Reply to Severance Package

Mot. at 2). But, the case that plaintiff cites for this proposition, *Chace v. Champion Spark Plug Co.*, 725 F. Supp. 868 (D. Md. Nov. 6, 1989), is inapposite. That case dealt with front pay, which under the ADEA is an equitable matter for the court, not the jury to decide. *See, e.g., Price v. Marshall Erdman & Assocs.*, 966 F.2d 320, 324 (7th Cir. 1992); *Fortino v. Quasar Co.*, 950 F.2d 389, 398 (7th Cir. 1991). Thus, *Chace* provides little guidance on the question of whether the Court should exclude evidence of the severed package from the jury's consideration on back pay, which is a matter for the jury to decide in an ADEA case. *See Lorillard v. Pons*, 434 U.S. 575, 582-83 (1978) (holding that there exists a right to jury trial in a private action under the ADEA for legal relief, which includes "enforcing . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation"); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1051 (7th Cir. 1990) (affirming jury verdict of $170,000.00 in compensatory and liquidated damages); *Allen v. Marshall Field & Co.*, 1982 WL 379, at * 11 (N.D. Ill. Apr. 8, 1982) (noting that "'[l]ost wages constitute legal relief under the FLSA' and the ADEA's adoption of the terminology and procedures of the FLSA explains the use of the term 'legal relief' in Section 626(b) [of the ADEA]") (citations omitted). Accordingly, the Court DENIES plaintiff's motion *in limine* no. 10.

Plaintiff's motion to bar evidence of the loans by Mr. Shepard stands on firmer footing. We reject defendant's argument that these loans are relevant to Mr. Shepard's motivation in terminating plaintiff's employment (Def.'s Resp. to Personal Loans Mot. at 2). We see little if any relevance to the evidence that Mr. Shepard loaned money to the plaintiff three or eight years prior to plaintiff's termination. Moreover, admission of the evidence concerning these loans might have the result of allowing in through the back door what defendant has indicated it will not seek to prove directly:

that is, the plaintiff's wealth or financial status. Thus, the Court will exclude evidence that Mr. Shepard made loans to the plaintiff in the amounts of $75,000.00 in 1990 and $25,000.00 in 1995.

That only remaining question is the alleged $5,000.00 balance on the 1995 loan that defendant claims existed at the time of the termination. Plaintiff claims that the loan was fully paid, and that there was no $5,000.00 balance (Pl.'s Personal Loans Mot. at 1). Defendant claims that there was a $5,000.00 balance which he offered to forgive as part of the severance package (Def.'s Resp. to Personal Loans Mot. at 1). However, defendant's statement of contested facts does not include this alleged loan forgiveness as part of the severance package that was offered or received (Final Pretrial Order, Schedule C, ¶¶ 21-23), and an exhibit that defendant seeks to offer at trial, which lays out a proposed severance, does not indicate that the outstanding debt would be forgiven (*see* Defendant's Exhibit 3). In these circumstances, the Court will preclude evidence that forgiveness of a $5,000.00 loan balance existing at the time of the termination was part of the severance package. Accordingly, plaintiff's motion *in limine* no. 11 is GRANTED.

## II.

We now turn to defendant's four motions *in limine*.

### A. The Motion *In Limine* to Exclude References To or Evidence of Defendant's Financial Condition (Motion *In Limine* No. 1).

Defendant seeks to bar evidence of its financial condition, net worth or profitability, or that of its owner Mr. Shepard, on the ground of relevance (Def.'s Mot. at 1); (Def's. Reply at 2 n.2). In response, plaintiff argues that defendant has placed its financial situation at issue due to Mr. Shepard's testimony that he terminated plaintiff because it was not "financially feasible" to have a part-time sales manager when he already employed three full-time managers and two finance

16

managers (Pl.'s Resp. at 2-3). However, defendant states that this was not a reference to any financial difficulty that the defendant or Mr. Shepard was experiencing, but rather was a statement indicating that plaintiff's position was duplicative and unnecessary (Def.'s Reply at 2 n.3).

Defendant has specifically represented that it will not offer evidence of its financial situation, or that of Mr. Shepard, as a reason for plaintiff's termination (Def.'s Reply at 7). Indeed, in one of its motions, plaintiff agrees that this representation was made in open court (Pl.'s Resp. to Motion *In Limine* Regarding Ability to Use Computer Systems at 2-3). And defendant represents it was on the basis of this representation that the district judge then presiding in the case denied plaintiff's motion to compel discovery of defendant's financial condition (Def.'s Reply at 1). Accordingly, evidence of the financial situation of defendant or its owner is irrelevant here, and admitting the evidence would run the risk of unfair prejudice by drawing to the jury's attention – for no good reason – differences in the financial stature of the parties.

In reaching this conclusion, the Court has considered plaintiff's assertion that without this evidence, it would be "impossible for the Plaintiff to rebut the Defendant's proffered reason for termination and establish pretext" (Pl.'s Resp. at 3-4). We disagree. Consistent with defendant's previous representation in open court and its representation in the briefing on this motion, Mr. Shepard presumably will testify that his reference to "financial feasibility" referred to the lack of economic justification for paying plaintiff to do a job that already was adequately staffed, and was not intended to say that the defendant "could not afford to retain Plaintiff" (Def.'s Mot. at 2 n.1). Evidence of the defendant's financial situation will not be necessary to rebut this explanation. Accordingly, defendant's motion *in limine* no. 1 is GRANTED.

17

**B.** **Motion *In Limine* to Exclude the Issue of Front Pay from Consideration by the Jury (Motion *In Limine* No. 2).**

In this motion, the defendant seeks to bar the jury from considering whether, in the event plaintiff prevails on its discrimination claim, front pay should be awarded in lieu of reinstatement (Def.'s Mot. at 1). Plaintiff resists this motion on two grounds, neither of which the Court finds persuasive.

*First*, plaintiff implies – but does not squarely assert – that front pay is a matter to be decided by the jury in a binding fashion (Pl.'s Resp. at 2). Any such suggestion is foreclosed by Seventh Circuit precedent squarely holding that "both entitlement to and amount of front pay are equitable issues to be decided by the judge rather than legal issues and hence for the jury." *Price v. Marshall Erdman & Assocs.*, 966 F.2d 320, 324 (7th Cir. 1992); *see also Fortino v. Quasar Co.*, 950 F.2d 389, 398 (7th Cir. 1991).

*Second*, plaintiff argues that even if he has no right to have the jury decide front pay, the Court should exercise its discretion to submit the question to the jury – presumably, for an advisory verdict (Pl.'s Resp. at 1). Certainly, the Court has authority to do so. *See, e.g., Price,* 966 F.2d at 324 ("an equity judge can always submit an issue to a jury for advice, but he is not bound by the advisory verdict"). Each side has cited a case in this district where a trial judge has, *Marlborough v. American Steel Foundries*, No. 95 C 3151, 1996 WL 82467 (N.D. Ill. Feb. 23, 1996), or has not, *Taylor v. Gilbert & Bennett*, No. 95 C 7228, 1997 WL 30948 (N.D. Ill. Jan. 15, 1997), submitted the question of front pay to a jury for an advisory verdict. However, neither party here has explained why the case that it cited should control rather the case cited by the other side. For the reasons that

follow, the Court exercises its discretion not to submit the matter of front pay to the jury for an advisory verdict.

When considering the question of front pay, a court first must decide whether reinstatement is impracticable, because that is a threshold prerequisite to front pay. *Price*, 966 F.2d at 325 ("[o]ne reason we concluded in *Fortino* that front pay is an equitable issue is that it can be awarded only if reinstatement, clearly an equitable remedy, is impracticable"). In making that determination, a court must consider the level of hostility between the employer and the employee, the nature of the employment position (it may make a difference whether it is an executive or a lower level position), and the lack of an available opening to which to reinstate the plaintiff. *See, e.g., Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994); *Price*, 966 F.2d at 325-326. If a court determines that reinstatement is impracticable, then in determining the amount and duration of any front pay award, the court must consider factors such as "whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded." *Downes*, 4 F.3d at 1141. *But see Price*, 966 F.2d at 326 (stating that the presence of a liquidated damages award "should play only a very small role" in determining the amount of front pay).

In deciding the questions of liability, back pay and liquidated damages, the jury in this case will not have to decide whether (in the event of finding of liability) reinstatement is a practical remedy. Likewise, while for purposes of mitigation the jury would have to consider plaintiff's ability to work and obtain other employment from the date of his termination to trial, the jury would not have to consider these questions on a forward-going basis. In this case, the Court believes that

19

the benefit to be derived from an advisory verdict would not outweigh these additional burdens that would be imposed on the jury. Thus, "we believe that it is more efficient for the Court to make [any front pay] determination on its own, rather than allowing the presentation of arguments on the matter and the rendition of a non-binding recommendation by the jury." *Taylor*, 1997 WL 30948, at * 4. Accordingly, the Court GRANTS defendant's motion *in limine* no. 2.[5]

**C.**     **Motion *In Limine* to Preclude Plaintiff from Submitting the Issue of Front Pay at Trial on the Ground that it is Unduly Speculative as a Matter of Law (Motion *In Limine* No. 3).**

In this motion, defendant asks for a ruling that even if plaintiff establishes liability, front pay cannot be awarded as a matter of law because the five-year period of front pay sought by plaintiff is speculative in light of plaintiff's "particularly advanced age" (Def.'s Mot. at 2-3 and n.2). This motion would have been better presented as one for summary judgment if defendant believes that the underlying material facts relevant to the question of front pay are undisputed, or if (as defendant appears to suggest) any factual disputes are irrelevant because the law creates a bright line standard that precludes a plaintiff from front pay if he has reached a certain age. We are not inclined to allow defendant to avoid the rigor required for summary judgment motions (such as statements of material undisputed facts supported by specific citations to the discovery record) through a belated motion *in limine*. And, in any event, the Court is not persuaded that defendant would have prevailed on a timely summary judgment motion on this point.

As for questions of fact, it appears to the Court from reviewing the various motions *in limine* that the parties disagree on several points that would be relevant to the question of front pay. For

---

[5]In granting this motion *in limine*, the Court does not bar plaintiff from offering evidence that may be relevant to the question of front pay, if that evidence also is relevant to the questions of liability, back pay and/or liquidated damages that will be for the jury to decide.

example, defendant says that plaintiff's relationship with Mr. Shepard, the decisionmaker, was strained toward the end, whereas plaintiff denies this – a question that would go to whether there is a level of hostility between the parties that would make reinstatement impracticable. There are also differences of opinion concerning plaintiff's ability to find other work: plaintiff says he has been unable to do so, despite his best efforts, whereas defendant says that plaintiff should have been able to obtain other work, and seeks to reduce any back pay award to zero on the grounds of failure to mitigate. This disputed point is relevant to the amount and duration of any front pay award, as is the question of plaintiff's willingness and ability to continue to work into the future.

As for any suggestion that these disputed facts do not matter because there is a legal impediment to a prevailing plaintiff obtaining front pay once he has reached a certain age, defendant has offered no authority that persuades the Court that this is – or should be – the law. Defendant principally relies on *Hybert v. Hearst Corp.*, 900 F.2d 1050 (7th Cir. 1990), a case in which the Seventh Circuit reversed a district court's decision to award a sixty-seven year old plaintiff front pay for a period of five years. In that case, the Seventh Circuit reasoned that because the trial court failed to give adequate consideration to several relevant factors, "it was impermissibly speculative to award Hybert front pay in such a large amount and covering such an extended length of time." *Id.* at 1057. We do not read *Hybert* as foreclosing altogether the possibility that someone sixty-seven years old (or even older) could be awarded front pay, as the appeals court remanded the case for further proceedings on the question of front pay – which left open the possibility of a front pay award on remand.

The Court sees no reason why, in the event of a finding of liability, plaintiff here should not have an opportunity to offer evidence to show that he should receive front pay. On this point, we

note that defendant claims that plaintiff could have mitigated his lost back pay by obtaining comparable employment and argues that, as a result, plaintiff should receive no back pay at all (Final Pretrial Order, Schedule O, at 4) ("[g]iven Plaintiff's skills, experience, and contacts in the industry, there is no reason he could not have found substitute employment earning at least as much as he was making at Shepard Chevrolet"). If – as defendant argues – plaintiff was able to work all the way through the time of trial, it is not clear why he suddenly would not be able to work at all after trial. The plaintiff will not be much older after the two or three day trial that will take place than he was before it commenced.

By these comments, the Court intimates no view as to whether, assuming a finding of liability, plaintiff would be entitled to recover front pay. All we hold at this point is that plaintiff is not foreclosed as a matter of law from seeking front pay. Accordingly, defendant's motion *in limine* no. 3 is DENIED.[6]

> **D.** **Motion *In Limine* to Exclude Evidence Concerning Plaintiff's Reassignment to a Part-time Position in 1995 (Motion *In Limine* No. 4).**

In this motion, defendant seeks to bar plaintiff from offering evidence that (1) plaintiff's job reassignment in 1995 constituted a "demotion," and (2) that at the time of that reassignment, Mr. Shepard made a comment reflecting an age bias – specifically, that the reassignment was being made because plaintiff was reaching "a certain age and should begin to take life easy" (Def.'s Mot. at 1-2). Plaintiff concedes that any attempt to recover damages based on this 1995 job reassignment

---

[6]In the event that there is a finding of liability, the Court will allow both parties to supplement the trial record with evidence relevant to the question of front pay. *See Downes*, 41 F.3d at 1141 ("there is nothing in the case to suggest that [front pay] evidence must be presented *at trial*, so long as the evidence is presented to the district court at some point") (emphasis original). Defendant presumably would not dispute this point, as it is consistent with defendant's other motion *in limine* – granted by the Court – to exclude evidence or argument concerning front pay to be offered at trial.

is time barred because it was never raised with Equal Employment Opportunity Commission (Pl.'s Resp. at 1). However, plaintiff argues that this evidence is relevant as circumstantial proof that the termination decision made in 1998 by Mr. Shepard was motivated by age (*Id.* at 2). Defendant argues that this evidence is irrelevant because there is no direct "linkage" between the 1995 reassignment and the 1998 termination (Def.'s Reply at 3-4), and because any comments that Mr. Shepard made during the 1995 reassignment were mere "stray remarks" that are not probative of a discriminatory motive (*Id.* at 4-5). Defendant further argues that any probative value of this evidence would be substantially outweighed by the risk that introduction of this evidence "will inevitably result in confusion of the issues," by inducing the jury to confuse the 1995 reassignment and the 1998 termination (*Id.* at 5-7).

At the outset, we note that defendant's argument is largely a rehash of the contentions it asserted unsuccessfully in seeking summary judgment (*see* doc. no. 15: 12/21/00 Reply Mem., at 2 n.2) and then in seeking reconsideration of the denial of summary judgment (*see* doc. no. 21: 06/21/01 Motion for Reconsideration, at 2-4). These arguments failed to carry the day with the district judge then presiding over the case, who specifically identified one of the issues of material fact for trial as whether Mr. Shepard made disparaging remarks regarding plaintiff's age during the 1995 job reassignment (doc. # 20: 05/31/01 Order). For the following reasons, this Court also finds that each of the defendant's arguments is unavailing.

*First*, "it is well settled that evidence of earlier discriminatory conduct by an employer that is time-barred is nevertheless entirely appropriate evidence to help prove a timely claim based on subsequent discriminatory conduct by the employer." *Mathewson v. Nat'l Automatic Tool Co.*, 807 F.2d 87, 91 (7th Cir. 1986) (citations omitted). This proposition has been recently reaffirmed by the

Seventh Circuit. *See Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 613 n.4 (7th Cir. 2001). Thus, we reject the defendant's suggestion that evidence of the 1995 reassignment should be barred based on plaintiff's failure to include that reassignment in an EEOC charge.

*Second*, the reassignment in 1995, and the alleged comments in connection with it, meet the threshold standard of relevance required by Rule 401. "The relevance threshold is low as the evidence need only 'tend' to make the fact of consequence more probable, . . . , thus requiring merely a rational connection between the evidence offered by the litigant and the fact of consequence the litigant intends to establish." *Palmer v. Ponderosa Sys., Inc.*, No. 88 C 3803, 1990 WL 60694, at *2 (N.D. Ill. Apr. 23, 1990) (citing *Int'l Merger & Acquisition Consultants, Inc. v. Armac Enter., Inc.*, 531 F.2d 821, 823 (7th Cir. 1976)). In this case, the alleged comments made by Mr. Shepard in 1995 could be construed as evidence that plaintiff's age played a role in the reassignment decision. Plaintiff's theory is that there is a clear link between the 1995 reassignment and the age-related comments made then, and the 1998 termination and the age-related comments made at that time. *See Mathewson*, 807 F.2d at 91 (finding that the "linkage between evidence surrounding plaintiff's demotion and his termination claim at issue is strengthened by the fact that when [defendant] terminated plaintiff, [defendant] mentioned the negative comments he had received a year earlier" when he was demoted).

The Court agrees. The fact that Mr. Shepard, the admitted decisionmaker in 1998, is the one who allegedly made the age-related comments in 1995 further strengthens this link. *See Palmer*, 1990 WL 60694, at *3 (evidence concerning a prior demotion was deemed admissible even though the individual responsible for the demotion was not the individual who made the termination decision, because both decisionmakers were "active decisionmakers in the same corporate

24

hierarchy"). Moreover, plaintiff here alleges that the reassignment in 1995 was a demotion. While defendant rejects that characterization, the jury might not do so if it believes the plaintiff's contention that the reassignment was involuntary, since the reassignment resulted in fewer hours and a decrease in salary. *See, e.g., Fortier v. Ameritech Mobile Communication, Inc.*, 161 F.3d 1106, 1112 n.7 (7th Cir. 1998) (note that a decrease in salary may constitute an adverse employment action). And, given that the alleged comments in 1995 were related to plaintiff's age (which is alleged to be the motivation of the 1998 termination), and were made by Mr. Shepard (who made the termination decision 1998), we do not agree that the alleged 1995 comments fall within the category of irrelevant "stray remarks."

The Court has considered the cases cited by defendant, but finds them distinguishable. For example, in *Fortier*, the Seventh Circuit found that a prior job restructuring (the removal of certain job responsibilities) did not constitute an adverse employment action. 161 F.3d at 1111-12. By contrast, if the plaintiff convinces the jury that the 1995 job reassignment was involuntary, a jury might reasonably conclude that that reassignment was a demotion and thus an adverse employment action. In *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242-43 (7th Cir. 1996), the appeals court found that two boorish and insensitive comments made by a decisionmaker were insufficient to prevent summary judgment. The Seventh Circuit noted that "[t]o be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision-making process," and that these comments failed to meet that test because they were made during casual conversation and while plaintiff was off of work due to a miscarriage. *Id.* at 242. By contrast, in this case the alleged comments in 1995 came in connection with a job reassignment that plaintiff

claims was an involuntary demotion, and allegedly reflected the same age bias that plaintiff claims that Mr. Shepard manifested by his comments during the 1998 termination.

Finally, while defendant suggests otherwise, the fact that three years passed between the two events does not make the prior evidence so remote as to render it inadmissible. "While the lapse of time between plaintiff's evidence relating to his demotion and the time of plaintiff's termination may reduce the weight of the evidence relating to his demotion," *Mathewson*, 807 F.2d at 91, at least one court in this district has ruled that evidence of a demotion three years prior to a termination is admissible. *Palmer*, 1990 WL 60694, at *1 (evidence of a demotion in November 1984 was admissible in a case involving a discharge in November 1987). For all of these reasons, we believe that this evidence meets the threshold standard of relevance.

*Third*, we do not believe that the relevance of this evidence is substantially outweighed by any unfair prejudice. Defendant's principal argument is that unfair prejudice will result from jury confusion about whether this case is about the 1995 alleged demotion or the 1998 termination (Def.'s Mot. at 3; Def.'s Reply at 5-7).[7] The Court disagrees. *Mathewson* contemplates that even though time barred, evidence of prior discriminatory acts may be relevant to prove a timely claim of later discriminatory conduct. 807 F.2d at 91. When this type of evidence is relevant, the jury always will have to be guided as to its proper use. Defendant's argument that evidence from the earlier time period will be unfairly prejudicial could be raised in every case where that evidence is offered and, if accepted, that argument would effectively eviscerate *Mathewson* by holding that evidence

---

[7]Defendant also argues that it is "procedurally unfair" to allow plaintiff to offer evidence of the 1995 job reassignment because defendant did not understand that plaintiff would attempt to use this evidence until the summary judgment motion, after the completion of discovery (Def.'s Mot. at 3). We note that defendant did not raise this point in its reply brief on summary judgment or in its motion for reconsideration. In any event, to the extent that defendant is seeking to exclude this evidence as a discovery sanction, we deny the request, as defendant has pointed to no discovery request that would have sought this particular information.

inadmissible in every case. We reject an argument that leads to that result. We see no reason why a cautionary instruction cannot be drafted that will inform the jury as to the limited purpose of the evidence concerning the 1995 reassignment, and that will make it clear that the only claim of discrimination for the jury to decide is with respect to the 1998 termination.

Accordingly, defendant's motion *in limine* no. 4 is DENIED.

## CONCLUSION

For the foregoing reasons, the Court rules as follows on the motions *in limine*:

Plaintiff's Motions *In Limine* Nos. 8-9, 11 are GRANTED.

Plaintiff's Motions *In Limine* Nos. 2-6, 10 are DENIED.

Plaintiff's Motions *In Limine* Nos. 1 and 7 are GRANTED in part and DENIED in part.

Defendant's Motions *In Limine* Nos. 1-2 are GRANTED.

Defendant's Motions *In Limine* Nos. 3-4 are DENIED.

The parties are instructed to inform their witnesses of the evidence excluded by this opinion, and to take steps to ensure that they do not disclose excluded evidence to the jury during their testimony.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: April 2, 2002

27